**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ALOYSIUS OLIVER (B51183),** | ) | |
| **Petitioner,** | ) | **Case No. 13 C 426** |
| | ) | |
| **v.** | ) | **Judge Joan B. Gottschall** |
| | ) | |
| **RANDY PFISTER, Warden,** | ) | |
| **Pontiac Correctional Center,** | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION AND ORDER

Chicago Police Officer Eric Lee died following a shoot-out in an alley on Chicago's South Side. A Cook County jury found Aloysius Oliver guilty of the first degree murder of Officer Lee, the aggravated assault of another police officer, and aggravated battery based on Oliver's beating an individual in his backyard during the altercation with the police. The court declined to impose the death penalty and sentenced Oliver to natural life. Oliver's *pro se* motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is before the court. For the following reasons, the petition is denied.

## I.    Background

The following facts and procedural posture relevant to Oliver's § 2254 petition are drawn from the state court record (Dkt. 12-13) and the Illinois Appellate Court's opinions in Oliver's consolidated direct and 735 ILCS § 5/2-1401 appeal, *People v. Oliver*, Nos. 1-04-3078 & 1-06-47 (Ill. App. Ct. Jun. 26, 2009) (unpublished order) (Dkt. 12-7), and collateral appeal, *People v. Oliver*, 2012 IL App. (1st) 102531, 972 N.E. 2d 199 (Ill. App. Ct. 2012) (Dkt. 13-1).

**B. Facts**

This court will presume that the state court's factual determinations are correct for the purposes of habeas review as Oliver neither contests them nor points to clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002).

The 6300 blocks of South Aberdeen Street and South Carpenter Street on Chicago's South Side are one block apart and parallel to each other, with an alley in between. On the evening of August 19, 2001, Chicago Police Officers Barner, Green, Lee, Jones and Flagg were involved in a narcotics investigation near 6347 South Aberdeen Street. All the officers were in plain clothes. Officers Lee, Green, and Barner were in an unmarked Ford, while Officers Jones and Flagg were in an unmarked green vehicle. At the same time, Oliver and his girlfriend Johanna Harris were in the backyard of Oliver's home at 6332 South Carpenter when they observed Lamar Logan urinating in the yard.

Oliver instructed Harris to get his cousin, Tommy Leach, who was in Oliver's house. She did so. Leach joined Oliver and the two men began to punch and kick Logan. Damon Rogers entered the yard and also started beating Logan. The officers noticed the altercation and proceeded down the alley towards Oliver's yard. Officers Barner and Green testified that they were in front along with Officer Lee and that the group displayed their badges around their necks. According to Officer Green, he yelled, "stop, police" and Oliver responded, "fuck the police man, this man is pissing in my yard" and continued to beat Logan. Dkt. 12, Ex. I at 2-3. Defense witnesses testified that no one identified themselves as police officers.

After Officer Barner noticed Oliver had a gun, he ran behind a car next to the garage at 6334 South Aberdeen. Officers Lee and Green pulled out their weapons and Oliver, Leach and Rogers started to flee. Officer Barner ran along the gangway between 6332 and 6334 South Aberdeen, while Officers Green and Lee remained next to each other near the north end of the garage at 6334 South Aberdeen. When Oliver was approximately 15 to 20 feet from Officers Green and Lee, he opened fire. Officer Green ducked but Officer Lee fell to the ground. Oliver fired again. After two shots, Officer Green ran to the south side of the garage and saw Oliver begin to run away.

In the meantime, Officer Barner yelled "stop, police" to Leach, who turned around and pointed a gun at Officer Barner. *Id*. at 3. Officer Barner shot at Leach but missed. As Leach ran away, Officer Barner ran back to his partners. At that point, he saw Oliver, who pointed a gun at him. Officer Barner said, "I'm the police" and Oliver responded, "you the police" and raised his gun. *Id*. Officer Barner shot at Oliver but his gun misfired. He grabbed the barrel of Oliver's gun while screaming for help. Officer Jones responded by tackling Oliver. Officers Barner and Jones wrestled Oliver's gun from him. In the process of taking Oliver's gun, it discharged but no one was injured. Officers at the scene testified that Oliver suffered abrasions to his face during the struggle and his subsequent arrest. An ambulance was called for Officer Lee, whose two gunshot wounds proved to be fatal.

Oliver gave an incriminating statement that he later unsuccessfully tried to suppress. At trial, the defense presented various witnesses in support of the theory that Oliver did not know that Officer Lee and his colleagues were police officers. Over the prosecution's objection, the court gave the jury instructions on second degree murder requested by the defense. The jury,

however, found Oliver guilty of the first degree murder of Officer Lee, the aggravated assault of

Officer Barner, and the aggravated battery of Logan.  Oliver was subsequently sentenced to

natural life imprisonment.

**A.     Procedural Posture**

**1.     Direct and § 2-1401 Proceedings**

Oliver appealed his conviction and sentence.  He also filed a post-trial motion seeking to

vacate the judgment and appoint an independent state's attorney pursuant to 735 ILCS §

5/2-1401, which allows litigants to seek relief from final judgments.  The motion attached,

among other things, copies of newspaper articles detailing federal charges against Officers Flagg

and Jones based on alleged police corruption.  On February 7, 2005, Oliver filed an amended §

2-1401 motion arguing that the federal charges placed his case in a new light and asking the

court to allow him to pursue post-trial discovery to explore the police surveillance prior to the

shooting, attack the credibility of the officers who were the subject of a federal investigation, and

determine if there were other suspects.  Oliver also contended that the newly discovered

evidence showed the indicted officers had a motive to fatally shoot Officer Lee.  The trial court

orally dismissed the petition and Oliver appealed.

The Illinois Appellate Court consolidated Oliver's appeals from his conviction and

sentence and from the denial of his § 2-1401 petition.  In the consolidated appeals, he argued:

> A.     Trial counsel's failure to file a renewed motion to suppress his statement was
> constitutionally ineffective.  Specifically, in Oliver's original motion to suppress,
> he contended his statement was physically coerced but could not point to
> supporting evidence and it appeared his injuries were incurred in an arrest-related
> scuffle.  During a subsequent deposition and at trial, however, Captain James
> Paoletti testified that Oliver was uninjured when he was taken into custody.
> Oliver asserts that trial counsel should have renewed the motion to suppress based
> on this evidence as it shows the court would have concluded his statement was

physically coerced.  He also argued that because the evidence presented at trial was full of  "contradictions and impeachment" (Resp. Ex. A at 1), the failure to renew the motion to suppress was prejudicial;

B.     The trial court erred in telling the jury to reread an instruction about second degree murder instead of directly answering a question from the jury reflecting confusion about the law;

C.     The trial court erred by not polling the jury after the defense submitted a newspaper column about Oliver's trial suggesting Oliver knew he was shooting a police officer and contending his defense theory should be rejected as a matter of public policy;

D.     During closing arguments, the prosecution violated Oliver's right to a fair trial by criticizing defense counsel's arguments, telling the jury its oath required a guilty finding, making improper comments, referring to Oliver's underage girlfriend, and encouraging the jury to determine guilt by association;

E.     The trial court's order denying Oliver access to Officer Barner's disciplinary records prevented Oliver from undermining the State's portrayal of Officer Barner as an outstanding professional;

F.     The trial court should have ordered Officers Flagg and Jones to be deposed under Illinois Supreme Court Rule 416 and, based on those depositions, allowed Oliver to move for a new trial;

G.     The prosecution's late tender of police reports containing impeachment evidence prejudiced Oliver and violated his rights under the United States and Illinois constitutions by forcing his attorneys to recall State police witnesses and thus look unprofessional during trial, and the trial court's refusal to give a jury instruction advising the jury that the recall was due to the State was prejudicial; and

H.     The trial court erred in dismissing Oliver's § 2-1401 petition because post-trial discovery was needed to explore: (a) the police surveillance of Oliver's home prior to the shooting based on newly discovered allegations of police corruption, (b) the misconduct of Officers Flagg and Jones, who were key State witnesses, and (c) whether Officers Flagg and Jones had the "opportunity and motive" to fatally shoot Officer Lee given their corrupt involvement in robbery, narcotics deals, and other criminal misconduct, Ex. F at 7.

1

On June 26, 2009, the Illinois Appellate Court affirmed.  Oliver filed a petition for leave

to appeal ("PLA") with the Illinois Supreme Court that renewed Claims A and B from his

Illinois Appellate Court proceedings. He also raised a variant of Claim H by asking the Illinois

Supreme Court to address "when (if ever) may a petition for relief from judgment discuss facts

postdating the judgment" and then to find that the evidence discovered after his trial merited

discovery. *See* Ex. J at 3. On November 25, 2009, the Illinois Supreme Court denied Oliver's

PLA.

### 2. State Post-Conviction Proceedings

On May 24, 2010, Oliver filed a *pro se* post-conviction petition pursuant to the Illinois

Post-Conviction Hearing Act, 725 ILCS §5/122-1, *et seq.* In his petition, he challenged the

effectiveness of trial and appellate counsel as follows:

A.  Trial counsel was ineffective for:

1.  failing to interview and call hospital personnel as witnesses or to present available photographs at the hearing on the motion to suppress to support Oliver's claim that he was physically coerced to confess; and

2.  improperly waiving Oliver's presence at *in camera* proceedings during jury selection when members of the venire were excused for cause and based on the use of peremptory challenges;

B.  Appellate counsel was ineffective for failing to:

1.  argue the State violated *Batson v. Kentucky*, 476 U.S. 79 (1986), when it used four of its seven peremptory challenges to excuse African-American members of the venire;

2.  argue trial counsel's strategy of simultaneously contending that Oliver acted in self-defense but reasonable doubt existed was inconsistent with Oliver's plea of not guilty;

3.  argue the trial court erred by denying Oliver's motion to dismiss counts 3 and 4 (which asserted Oliver knew Officer Lee was a police officer) and to preclude a finding that he was eligible for the death penalty;

4.  argue there was insufficient evidence to prove Oliver guilty beyond a reasonable doubt of first degree murder;

5.　　argue the trial court erred in allowing family, friends, and police officer spectators to wear buttons depicting Officer Lee in uniform;

6.　　argue trial counsel improperly waived Oliver's presence at *in camera* proceedings during jury selection when members of the venire were excused for cause and based on the use of peremptory challenges; and

7.　　raise all of the claims raised at the appellate court level in his direct appeal PLA.

The trial court dismissed the petition. On appeal, Oliver was represented by counsel and raised a single claim: his trial counsel's forfeiture of his presence during a portion of jury selection was constitutionally ineffective. The Illinois Appellate Court affirmed. Oliver, who continued to be represented by counsel, filed a PLA arguing: (1) his trial counsel's forfeiture of his presence during a portion of jury selection was constitutionally ineffective; and (2) the appellate court erred by concluding that this claim could only succeed if Oliver showed prejudice by establishing that a biased jury was impaneled. On September 26, 2012, the Illinois Supreme Court denied the PLA.

### 3.　　Oliver's § 2254 Petition

On January 17, 2013, the court received Oliver's habeas corpus petition, which was dated January 10, 2013. In his petition, Oliver raises five claims:

A.　　Trial counsel was ineffective for failing to renew Oliver's motion to suppress his statement because Captain Paoletti's testimony before and during trial that Oliver had no injuries prior to the statement established that the confession was the product of physical coercion;

B.　　The trial court erred in telling the jury to reread a jury instruction about second degree murder instead of answering a jury question that reflected confusion about the law;

C.	Oliver was prejudiced by the State's late tender of discovery (two police reports, including one with missing attachments), and the judge's remedy of allowing recross-examination of two officers did not cure the prejudice;

D.	In its closing argument, the State improperly referred to evidence of other crimes, stated Oliver had the "heart of a killer" and was like "Cain who slew Abel," characterized Oliver as irresponsible, focused on his alleged thirteen-year-old girlfriend, and told the jurors that their oath demanded a conviction; and

E.	Trial and direct appeal counsel were ineffective in connection with jury selection. Specifically:

    1.	Trial counsel's forfeiture of Oliver's presence at *in camera* proceedings during jury selection when members of the venire were excused for cause and based on the use of peremptory challenges and the court addressed *Batson* and reverse-*Batson* challenges was ineffective;

    2.	Appellate counsel was ineffective for failing to challenge this decision on direct appeal.

## II.	Discussion

For the following reasons, Oliver is not entitled to habeas relief as: (1) Claims C (late tender of discovery), D (the State's closing argument), and Claim E2 (ineffective assistance of appellate counsel with respect to jury selection) are barred by the doctrine of procedural default because Oliver did not present them in one full round of state court proceedings and none of the exceptions to procedural default are applicable; (2) Claim E1 (ineffective assistance of trial counsel with respect to jury selection) is barred by the independent and adequate ground of forfeiture; (3) Claim B (the jury's question about the second degree murder instruction) is not cognizable and in any event is meritless; and (4) Claim A (ineffective assistance of trial counsel with respect to the renewal of Oliver's motion to suppress) is properly preserved and arises under federal law but fails on the merits.

## A.    Procedurally Barred Claims

The court begins by considering procedural default and the independent and adequate state ground doctrine.  It then turns to whether any exceptions to these procedural bars are available.

### 1.    Procedural Default – One Full Round (Claims C, D, and E2)

As noted above, Claim C is based on the State's late tender of discovery, Claim D is based on the State's closing argument, and Claim E2 is based on ineffective assistance of appellate counsel in connection with jury selection.  The respondent contends that these claims are procedurally defaulted under the doctrine of one full round.  A petitioner must present his claims to all levels of the Illinois courts to avoid procedural default.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999).  Thus, the court must determine if Oliver presented Claims C, D, and E2 to the state trial court, the Illinois Appellate Court, and the Illinois Supreme Court.  *See Castille v. Peoples*, 489 U.S. 346, 349 (1989) (failure to present claim to state intermediate court means it is procedurally barred); *O'Sullivan*, 526 U.S. at 844 (failure to present claim to state's highest court means it is procedurally barred).

Oliver included Claims C and D in his intermediate appellate court brief for his direct appeal but not in his direct PLA.  He did not raise either claim during any stage of his post-conviction or § 2-1401 proceedings.  Claim E2 does not appear in Oliver's direct appeal or his § 2-1401 proceedings.  Oliver included it in his state post-conviction appeal, but his post-conviction PLA arguments about jury selection center on the alleged ineffective assistance of trial counsel, not appellate counsel.  Claims of ineffective assistance of trial and appellate counsel are distinct so presentment of an ineffective assistance of trial counsel argument does not

preserve a claim of ineffective assistance of appellate counsel. *United States ex rel. Barbosa v. Hardy*, No. 11 C 1622, 2011 WL 5592845, at *5 (N.D. Ill. Nov. 14, 2011). Accordingly, Claims C, D, and E2 are procedurally defaulted. *See Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004) (a petitioner must "assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings . . . . This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory.").

## 2. Independent and Adequate State Ground (Claim E1)

The court next turns to Oliver's claim that his trial counsel's waiver of his presence during jury selection was constitutionally ineffective (Claim E1). Under the independent and adequate state ground doctrine, this court may not "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), *superseded by statute on other grounds*, 28 U.S.C. § 2254(b)(2). A state law ground is independent when "the state court actually relied on a state rule sufficient to justify its decision" and is adequate when the state court applies the rule "in a consistent and principled way." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382-83 (7th Cir. 1990).

The Illinois Appellate Court found that Oliver forfeited his jury selection claim because he "did not preserve the issue for review on the direct appeal." Dkt. 13, Resp. Ex. Q at 5. The court also held that given Oliver's failure to preserve this issue, he had the burden of proof to establish that his absence from jury selection was prejudicial. It then concluded that Oliver had failed to meet this burden because he offered "nothing – no evidence in the record, no affidavits,

and not even any naked assertions in his postconviction petition – to support a finding that his absence from the *in camera* jury selection led the court to empanel a biased jury." *Id.*

Forfeiture is an independent and adequate state law ground. *Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir. 1997); *see also Woods v. Schwartz*, 589 F.3d 368, 375 (7th Cir. 2009) (waiver is an independent and adequate state law ground). The Illinois Appellate Court's decision clearly rested on a finding that Oliver did not properly preserve his jury selection claim as required by state law. Thus, that claim is barred by the independent and adequate state ground doctrine. The Illinois Appellate Court's alternative finding that the trial court's rejection of the claim was not plain error does not affect this conclusion as the Seventh Circuit "consistently [has] held that where a state court reviews a federal constitutional claim for plain error because of a state procedural bar (here, the doctrine of waiver), that limited review does not constitute a decision on the merits." *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010). Accordingly, Oliver cannot obtain federal habeas relief based on his jury selection claim.

### 3. Exceptions to Procedural Default

A federal court may not grant relief on a procedurally defaulted claim unless the petitioner can: (1) establish cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) demonstrate that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. at 750. Oliver does not contend that cause and prejudice or the fundamental miscarriage of justice exceptions excuse his defaults. Thus, he has forfeited any arguments based on these exceptions. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008) (when petitioner does not assert

reasons why his procedural default should be excused, the court "cannot consider his claim"). In any event, as discussed below, neither of the exceptions to procedural default helps him.

### a.    Cause and Prejudice

#### i.    The General Rule

Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 282 n.24 (1999). Here, Oliver failed to follow state procedural rules properly. Nothing in the record before the court indicates that an objective factor prevented him from doing so. The court thus must consider whether he can establish cause in another way.

#### ii.    Can Oliver Rely on Ineffective Assistance of Direct Appeal Counsel to Establish Cause to Excuse the Default of His Ineffective Assistance of Trial Counsel Claim?

As noted above, Oliver procedurally defaulted his claim that his trial counsel's waiver of his presence during jury selection rose to the level of constitutionally ineffective assistance (Claim E1). Oliver blames his direct appeal counsel for not including an ineffective assistance of trial counsel claim in his direct appeal briefs before the Illinois Appellate Court (Claim E2). "[A] claim of attorney ineffectiveness which is defaulted in state court cannot be the basis for cause, unless the petitioner can establish cause and prejudice for the ineffectiveness claim as well." *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010); *see also Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000) ("a procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself."). As discussed above, Claim E2 is itself defaulted. The record does not establish

that an objective factor caused this default. Oliver thus cannot rely on ineffective assistance of direct appeal counsel to excuse the default of his ineffective assistance of trial counsel claim.

### iii. Does the Fact that Oliver Filed a *Pro Se* State Post-Conviction Petition Establish Cause to Excuse the Forfeiture of His Ineffective Assistance of Trial Counsel Claim?

Oliver included the argument that his trial counsel's waiver of his presence during jury selection constituted ineffective assistance of counsel in his *pro se* post-conviction filing with the trial court and his counseled filings with the Illinois Appellate Court and the Illinois Supreme Court. The state courts concluded that Oliver's failure to present this argument on direct appeal meant it was forfeited. As discussed above, the state courts' reliance on forfeiture is an independent and adequate state ground. This is a form of procedural default that can potentially be excused by a showing of cause. *See Thompkins v. Pfister*, 698 F.3d 976, 987 (7th Cir. 2012)

In *Coleman v. Thompson*, 501 U.S. 722, 757 (1991), the Supreme Court held there is no constitutional right to counsel in state post-conviction proceedings so the ineffectiveness of state post-conviction counsel cannot serve as cause that can excuse procedural default. Two recent Supreme Court cases carve out a "narrow exception" to *Coleman* by establishing limited circumstances where a petitioner who files a *pro se* state post-conviction petition or alleges his state post-conviction trial counsel was ineffective can establish cause. *Martinez v. Ryan*, — U.S. —, 132 S.Ct. 1309, 1320 (2012); *Trevino v. Thaler*, — U.S. —, 133 S.Ct. 1911 (2013).

Because Oliver filed a *pro se* state post-conviction petition, the court considers whether the exceptions in *Martinez* or *Trevino* can resuscitate his forfeited ineffective assistance of trial counsel claim. The exceptions in both cases are premised on the omission of arguments in the post-conviction petition due to the petitioner's lack of counsel or ineffective counsel. *Martinez*

*v. Ryan*, 132 S.Ct. at 1320; *Trevino v. Thaler*, 133 S.Ct. at 1917-18.  Although Oliver filed his state post-conviction petition *pro se*, he included his ineffective assistance of trial counsel claim based on jury selection.  Thus, *Martinez* and *Trevino* are inapplicable.  Accordingly, none of the exceptions to procedural default establish cause that excuses the default of Oliver's procedurally barred claims (Claims C, D, E1, and E2).  Because cause does not excuse any of his procedurally defaulted claims, the court need not address prejudice.  *Promotor v. Pollard*, 628 F.3d at 887.

### b.        Fundamental Miscarriage of Justice

The fundamental miscarriage of justice exception is also inapplicable because "this relief is limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent."  *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995).  To show "actual innocence," a petitioner must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him.  *Id*.

Neither Oliver's petition, nor the state court pleadings submitted to the court, contain any substantiated allegations of actual innocence.  Moreover, a habeas petitioner may not establish actual innocence by attempting to relitigate matters that a jury considered and rejected.  *See United States ex rel. Centeno v. Hardy*, No. 10 C 1958, 2010 WL 2990043, at *2 (N.D. Ill. Jul. 20, 2010) (rejecting actual innocence claim based on the petitioner's dissatisfaction with an adverse state court ruling as "[the petitioner's] 'actual innocence' argument is fundamentally no different from the claim of any other habeas petitioner who feels that the state court got it wrong.").  Thus, Oliver's contention that he did not know that the individuals who rushed to Logan's aid were police officers fails to show that he is actually innocent.

**B.	The Trial Court's Response to the Jury's Question About the Instructions
	(Claim B)**

Oliver argues that the trial court erred when it declined to answer a jury question that

allegedly reflected confusion about the applicable law.  The jury was charged with determining

if Oliver was guilty of either first or second degree murder.  As noted by the Illinois Appellate

Court:

> During deliberations, the jury sent out a note which read, "does the phrase 'but his
> belief that such circumstance [sic] exist is unreasonable' mean that if the jury
> does not believe that such circumstances exist then there are no mitigating
> factors?"  Defense counsel requested either a "yes" or "no" response.  The trial
> judge had the following discussion with defense counsel and the prosecution:
>
>> I don't want them to just read one instruction.  I want them to read
>> all the instructions on the issue of first-degree murder so they don't
>> emphasize one to the exclusion of others.  And your reading of the
>> question calls you to think there's a simple answer no, and the
>> State's reading calls for them to think there's a simple answer yes,
>> and there's room for reasonable people to disagree as to what the
>> question means in that regard, and I think that it is your thought
>> that we don't want to conjecture as to exactly what that means.  So
>> I think we have an idea depending on everybody's point of view,
>> but I want to be as neutral as possible with that as well as get them
>> back on track and get them back on focus without directing one
>> way or the other their final outcome.
>
> After that discussion, the trial judge answered the question by telling the jurors to
> "please reread this instruction as well as all the instructions dealing with the
> offense of first-degree murder."
>
> The question from the jury demonstrated the complex issues involved in the
> instant case.  We find *People v. Jennings*, 343 Ill. App. 3d 717 (2003), instructive.
> In *Jennings*, the jury question was a complicated, compound question to which
> the defense wanted a simple "no" answer.  The trial judge refused to provide an
> answer, but instead referred the jury back to the original instructions.  That
> approach was found to be a proper exercise of discretion, as the appellate court
> recognized that the "note sent by the jury was a compound question and not
> meant for a simple yes-or-no answer."  *Jennings*, 343 Ill. App. 3d at 729.

Similarly, in the instant case the question was complicated and best answered by telling the jury to review all the applicable instructions. The jury was requesting an answer as to whether mitigation existed and it would have been improper for the trial judge to offer an opinion by answering the question "no" as defendant argues on appeal.

The record reflects the jurors were properly instructed as to the applicable law regarding first-degree and second-degree murder. Both IPI Crim. 4th 7.05 and 7.06 were given to the jury explaining the applicable law. Defendant did not challenge those instructions at trial or on appeal. It is presumed that the jury, which was properly instructed, followed the instructions and applied the law to the facts in reaching its verdict. *People v. Speight*, 153 Ill. 2d 365, 373 (1992).

For the reasons previously discussed, there was no abuse of discretion by the judge telling the jury to reread the instructions. Any confusion or concern by the jury in the instant case was correctly resolved by the judge having the jurors refer back to the instructions.

Dkt. 12-7, Resp. Ex. I at 7-9; *see also* Dkt. 13-14, Resp. Ex. V at KKK195-204 (trial court colloquy).

Oliver contends the jury's question showed that it misunderstood the law about first and second degree murder. The jurors were instructed in conformance with Illinois law. A federal court may issue a writ of habeas corpus to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Wilson v. Corcoran*, — U.S. —, 131 S.Ct. 13, 16 (2010), *quoting Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). This means that to the extent Oliver is arguing that the response to the jury's question violated state law, his claim is not cognizable for purposes of federal habeas review. *See Davis v. Greer*, 675 F.2d 141, 144 (7th Cir. 1982) ("Of course, if the petitioner's sole claim is that the jury instructions failed to comply with state law, the petition does not state a cognizable federal claim.").

Nevertheless, the court may reexamine a state court's determination of a state law question if it rises to the level of a violation of due process. *See generally Middleton v. McNeil*, 541 U.S. 433 (2004); *see also Suprenant v. Superintendent*, No. 3:11-CV-410, 2012 WL 1430542, at *3 (N.D. Ind. Apr. 24, 2012) (the argument that jury instructions violated due process principles is a cognizable constitutional claim."). This does not help Oliver, as he did not couch his jury question argument in federal constitutional terms through one full round of state court proceedings. Thus, any due process claim would be procedurally defaulted. *Lieberman v. Thomas*, 505 F.3d 665, 670 (7th Cir. 2007) (to avoid procedural default, a petitioner must "alert . . . the state court to the federal nature of his claim in a manner sufficient to allow that court to address the issue on a federal basis"); *Terry v. Uchtman*, No. 06 C 1093, 2013 WL 886716, at *8 (N.D. Ill. Mar. 7, 2013) (claim based on allegedly erroneous jury instructions and questions from the jury about the instructions was procedurally defaulted due to the petitioner's failure to cast it in federal constitutional terms in the state court proceedings).

In any event, the trial judge found that the first-degree murder instructions, as a group, addressed the jury's question. He thus told the jurors to reread the instruction that was the subject of their question as well as all the instructions addressing the offense of first-degree murder. A trial judge may answer a jury's question by referring the jury to the appropriate instruction. *Waddington v. Sarausad*, 555 U.S. 179, 195-96 (2009) ("[w]here a judge 'respond[s] to the jury's question by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry,' and the jury asks no followup question, this Court has presumed that the jury fully understood the judge's answer and appropriately applied the jury instructions") (quoting *Weeks v. Angelone*, 528 U.S. 225, 234

(2000)). Here, the trial court directed the jury to the Illinois pattern instructions addressing first-degree murder, which Oliver did not challenge. As the jury did not ask a further question, this court must presume the jury understood and followed the instructions.

Moreover, Oliver is not entitled to habeas relief for an error related to the trial court's response to a jury note unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Hedgpeth v. Pulido*, 555 U.S. 57, 66 (2008) (applying the *Brecht* "substantial and injurious" standard to habeas claims based on a trial judge's response to jury questions). Once again, Oliver has procedurally defaulted any such claim by failing to raise it in one full round of state court proceedings. In addition, since Oliver has never challenged the instructions, he cannot establish that a reference to correct, accurate instructions had a substantial and injurious effect on the verdict. Accordingly, to the extent Oliver's jury question claim is properly before the court, it is meritless.

## C. Ineffective Assistance of Trial Counsel Based on the Failure to Renew Oliver's Motion to Suppress (Claim A)

Captain James Paoletti testified he did not see injuries on Oliver's face when Oliver was taken into custody. Oliver asserts that his trial counsel was ineffective based on the failure to renew Oliver's pre-trial motion to suppress based on Captain Paoletti's deposition and trial testimony. According to Oliver, the testimony shows he was injured after he was in custody and thus establishes that a renewed motion to suppress based on his claim that the police coerced him into confessing would have been successful.

### 1.      Standard of Review

A habeas petitioner is entitled to a writ of habeas corpus under 28 U.S.C. § 2254 if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000).  A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."  *See Williams*, 529 U.S. at 405.

With respect to the "unreasonable application" prong of § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case.  *See id*. at 407.  A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable.  *Harrington v. Richter*, — U.S. —, 131 S.Ct. 770, 786 (2011) ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable").

### 2.      The Illinois Appellate Court's Decision

The Illinois Appellate Court rejected Oliver's ineffective assistance claim based on counsel's failure to renew the motion to suppress, explaining:

> [Oliver] contends his counsel's failure to renew during trial his motion to suppress statements was so prejudicial as to require reversal and remand for a new trial.  The original record developed during the motion to suppress did not support [Oliver]'s allegation that his statement was physically coerced because the evidence reflected [Oliver] was injured in an arrest-related scuffle.  However, after the prosecution disclosed additional discovery during trial, the trial judge ordered the deposition of Captain James Paoletti.  In that deposition Captain Paoletti testified that [Oliver] appeared to have no injuries after he was in

custody. [Oliver] contends that this testimony proves [Oliver] "received his undisputed injuries after arrest" and his counsel's failure to renew the motion to suppress the statement so prejudiced [Oliver] as to require a new trial.

In *Strickland v. Washington*, 466 U.S. 668 [] (1984), the United States Supreme Court set forth the following two prong test to determine whether a defendant has been denied effective assistance of counsel: (1) the defendant must show that counsel's representation fell below an objective standard of reasonableness, and (2) the defendant must show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687 []. The defendant must overcome a "strong presumption" that his counsel's conduct falls within the wide range of reasonable professional assistance and that the challenged conduct constitutes sound trial strategy. *Strickland*, 466 U.S. at 689 []. If the ineffectiveness claim can be disposed of on the basis that the defendant did not suffer sufficient prejudice, a court need not consider whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697 []. Regarding the issue of prejudice, [Oliver] has the burden of showing that there was a "reasonable probability" that a renewed motion would have succeeded. *People v. Casey*, 341 Ill. App. 3d 759, 767 (2003) (to demonstrate sufficient prejudice defendant "must show that the trial judge would have reversed his previous decision and granted the motions in light of the trial testimony").

In Captain Paoletti's deposition he described observing [Oliver] for a brief amount of time. He estimates the period of observation to be as short as a minute or maybe a minute and a half, but no more. We are mindful that Captain Paoletti testified both at his deposition and during trial that he observed [Oliver] to be without injury. However, that observation in his own words took place during a "very, very short period of time." We agree with the prosecution that "common sense would suggest that Captain Paoletti's focus was on his fallen officer, a chaotic crime scene, and other visibly shaken officers, and not on the abrasions sustained by [Oliver]."

Moreover, the record reflects testimony by officers who had much more significant contact with [Oliver]. Officer Barner and Officer Jones wrestled with [Oliver] in order to disarm him. Officer Barner explained that [Oliver] suffered injuries to his face during the scuffle for his gun. Detective Thomas Kelly testified that the first time he saw [Oliver] at Area One he observed abrasions to [Oliver]'s face. These observations took place before [Oliver]'s initial denial and subsequent confession. The forensic findings of [Oliver]'s blood at the scene of arrest further corroborates the description of the struggle by Officer Barner. The prosecutor, Darren O'Brien testified that he spoke with [Oliver] and that [Oliver] told him that nobody threatened him or promised him anything and that he had been treated "fine" while in police custody.

[Oliver]'s argument that he received ineffective assistance of counsel fails to satisfy either prong of the *Strickland* standard. Defense counsel's decision to not renew the motion to suppress reflected sound trial strategy based upon a recognition that the totality of the evidence would have defeated a renewed motion to suppress. Accordingly, the record reflects no deficient performance by counsel, and no prejudice to [Oliver].

Dkt. 12-7, Resp. Ex. I at 4-6.

### 3. Is Oliver Entitled to Habeas Relief Based on His Counsel's Failure to Renew the Motion to Suppress? (Claim A)

Oliver argues that Captain Paoletti's testimony definitively establishes that he was injured after he was taken into custody, as opposed to during his arrest. As noted above, Oliver may only obtain habeas relief based on his ineffective assistance of counsel claim if the state courts' decision is "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). The well-known *Strickland* standard governs whether counsel's performance is constitutionally ineffective. *See Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). Under *Strickland*, the court must consider whether counsel's representation fell below an objective standard of reasonableness and whether there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 687-88, 694.

In its opinion, the Illinois Appellate Court expressly relied on *Strickland* and correctly identified the standard announced in that case. This court thus finds that the state court's decision is not "contrary to" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Hardy v. Cross*, — U.S. —, 132 S.Ct. 490, 494 (2011) (when a state court identifies the correct Supreme Court standard, its decision is not "contrary to" clearly established federal law); *Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006)

(a "decision applying the correct legal rule to the facts of a case is not 'contrary to' within the meaning of §2254(d)(1).").

The court thus turns to whether the decision was "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). The state court concluded that counsel's performance satisfied the performance prong of *Strickland* and that Oliver was not prejudiced by the failure to renew a motion that would have been denied.

The record shows that on the day of the shooting, Captain Paoletti heard "an excited call for help" at approximately 9:15 p.m. about a police officer who had been shot. Shortly thereafter, another officer ran into his office and said an officer had been shot. Dkt. 13-7, Resp. Ex. V3 at FFF26-27. When Captain Paoletti arrived at the scene, he saw Officer Lee lying on the ground with what appeared to be fatal wounds. *Id*. at FFF34. Officer Green was nearby and was "very, very, very upset . . . . He was crying. He was shouting. He was in a lot emotional distress." *Id*. at FFF39. Officer Green started banging himself against a parked car and "was just screaming. 'What am I going to tell his wife? What am I going to tell his wife?' He just kept going and going and going." *Id*. at FFF50-51.

As Captain Paoletti began to follow police procedures regarding notifications about the shooting of a police officer, he heard a disturbance immediately to the south. Officer Barner was holding a handcuffed individual who turned out to be Oliver. Officers Barner, Flagg, and Jones all were "extremely, extremely agitated, trying to tell [him] what was happening but in such a manner it was very hard to understand." *Id*. at FFF36. Captain Paoletti gleaned that the officers believed Oliver was involved in the incident. *Id*. at FFF42. He thus ordered Oliver to be

transported to Area 1 Detective Headquarters. At that point, he had viewed Oliver for 60 to 90 seconds. *Id*. at FFF44. He noticed Oliver was a black male who "appeared to be fine, didn't appear to have any problems" or injuries. *Id*. at FFF46; see also Dkt. 13-9, Resp. Ex. V5 at III235-37. Captain Paoletti also ordered an ambulance for Officer Green as he thought Officer Green was going into shock.

As noted by the Illinois Appellate Court, Captain Paoletti was at the scene because he was the watch commander and believed an officer had been shot. He observed Oliver at night for a very short period of time in the middle of a chaotic scene where a fellow officer had received a mortal wound and another officer was hysterical. As he began to follow police procedure due to Officer Lee's condition, he was distracted by a commotion. The officers holding Oliver were extremely upset. The Illinois Appellate Court found that as a matter of common sense, Captain Paoletti's focus was on Officer Lee, the crime scene, and the other visibly upset officers, not whether Oliver had any facial abrasions. Dkt. 12-7, Resp. Ex. I at 5. It also stressed that forensic testing showed that Oliver's blood was at the scene in a manner that was consistent with Officer Barner's description of his struggle with Oliver. *Id*.; *see also* Dkt. 13-8, Resp. Ex. V at HHH19-20, HHH28-30.

Next, the Illinois Appellate Court noted that Officers Barner and Jones both testified that Oliver received abrasions during his struggle with police and that these officers were best situated to view Oliver's condition before and after his arrest. Officer Barner tried to shoot Oliver at close range but his gun misfired. He thus grabbed the barrel of Oliver's gun while screaming for help as Officer Jones responded by tackling Oliver. The two officers then

wrestled Oliver's gun from him, subdued him, and handcuffed him but continued to hold onto his arms.

The record also shows that Detective Thomas Kelly testified that when he first saw Oliver at the Area 1 police station, Oliver had abrasions on his face. Before Oliver gave an inculpatory statement, Detective Kelly took Oliver to a bathroom so he could wash and bandage his face. Dkt. 13-8, Resp. Ex. V at HHH46-47. Moreover, a prosecutor testified that Oliver told him the police had treated him "fine." Dkt. 12-7, Resp. Ex. I at 5-6.

Based on this evidence, the Illinois Appellate Court found that defense counsel's decision not to renew the motion to suppress was a reasonable strategy based on his "recognition that the totality of the evidence would have defeated a renewed motion to suppress." *Id*. at 6. This conclusion easily satisfies the "unreasonable application" prong of § 2254(d)(1) as given the state court's assessment of all of the evidence, including the witnesses' credibility, no rational person could draw a conclusion other than that reached by the state court: at the time Captain Paoletti saw Oliver for 60-90 seconds at night, he was extremely distracted by a chaotic crime scene, multiple upset officers, and Officer Lee's near-death condition, so counsel was reasonably entitled to rely on the forensic evidence and otherwise consistent testimony about Oliver's facial abrasions.

The failure to pursue a futile motion to suppress does not constitute ineffective assistance. *United States v. Jackson*, 103 F.3d 561, 575 (7th Cir. 1996); *see also United States ex rel. Williams v. Pierce*, No. 09 C 7369, 2012 WL 3835829, at *7 (N.D. Ill. Sept. 4, 2012) (rejecting ineffective assistance claim based on the failure to file a futile motion to suppress); *United States ex rel. Navarro v. Atchison*, No. 11 C 6757, 2012 WL 3638472, at *11 (N.D. Ill.

Aug. 21, 2012) (same).  Given all of the evidence, a motion to suppress would have been doomed.  Thus, Oliver's ineffective assistance claim is meritless.  *See Thompkins v. Pfister*, 698 F.3d at 988 ("We, in turn, can find no fault with the state court's decision [regarding the performance prong].  To the contrary, it was eminently reasonable, and [the petitioner] has given us no good reason to question it.").

## III.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the court turns to whether a certificate of appealability should issue. Under 28 U.S.C. § 2253(c)(2), "(1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2) [t]he certificate must identify each substantial constitutional question; (3) [i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4) [a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5) [i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal."  *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

For the reasons stated in this order, the court finds that Oliver has not made a substantial showing of the denial of a constitutional right as he has not demonstrated "that reasonable jurists could debate whether the challenges in his habeas petition should have been resolved differently

or that his petition adequately shows a sufficient chance of the denial of a constitutional rights that he deserves encouragement to proceed further." *Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). Accordingly, the court declines to issue a certificate of appealability.

**IV.     Conclusion**

For the above reasons, Aloysius Oliver's request for a writ of habeas corpus under 28 U.S.C. § 2254 is denied. The court declines to certify any issues for appeal under 28 U.S.C. § 2253(c). The clerk is directed to enter a Rule 58 judgment terminating this case.


ENTER:


_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: June 20, 2013